**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

DEANNA CHILDERS,             )
                                      )
        Plaintiff,            )           Case No. _____
                                        )
v.                             )           Judge
                                        )           Magistrate Judge
ASCEND FEDERAL CREDIT UNION,   )
                                      )           JURY DEMAND
        Defendant.          )

## <u>COMPLAINT</u>

During Plaintiff DeAnna Childers' ("Plaintiff" or "Ms. Childers") first job interview with Defendant Ascend Federal Credit Union ("Defendant" or "Ascend"), she informed her supervisor that she and her husband bought and flipped homes as a side endeavor. She was subsequently hired, and her employer never expressed any issue with her home renovation and sales business and subsequent licensing as a Real Estate Agent for the purposes of representing herself in real estate sales. In March 2023, Plaintiff announced her pregnancy and requested leave pursuant to the FMLA. The day after Plaintiff requested medical leave for her prenatal appointments and the upcoming birth of her child, she was notified that she would no longer be able to continue working what Ascend considered "outside employment." She complained to Human Resources and her supervisors that she felt she was being discriminated against for requesting leave related to her pregnancy. The very next day, April 21, 2023, she was fired.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.,* the Tennessee Human Rights Act, T.C.A. §§ 4-21-101, *et seq.,* and the Tennessee Pregnant Workers Fairness Act, Tenn. Code Ann. § 50-10-101, *et seq.,* alleging the following:

1

## PARTIES

1. Plaintiff is a citizen and resident of Cannon County, Tennessee.

2. Upon information and belief, Defendant Ascend Federal Credit Union is a federally-chartered credit union, with its principal place of business located at 520 Airpark Dr, Tullahoma, Coffee County, Tennessee 37388. Defendant also has offices located at 1524 Williams Dr, Murfreesboro, Rutherford County, Tennessee, where Plaintiff worked at all material times to this action.

3. At all material times, Defendant has been an employer as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), the Tennessee Human Rights Act, T.C.A. § 4-21-101, *et seq.* ("THRA"), and the Tennessee Pregnant Workers Fairness Act, Tenn. Code Ann. § 50-10-101, *et seq.* ("PWFA").

4. At all material times, Plaintiff was an employee as defined by Title VII, the FMLA, THRA, and PWFA.

## JURISDICTION AND VENUE

5. This is an action for unlawful employment practices brought under Title VII, the FMLA, THRA, and PWFA.

6. This Court has jurisdiction under 28 U.S.C. § 1331, § 1343(a)(4) and § 1367(a).

7. Venue is proper under 28 U.S.C. § 1391(b)(2), since a substantial part of the events giving rise to these claims occurred in Rutherford County, Tennessee.

8. Plaintiff complied with all conditions precedent to the filing of these claims pursuant to 42 U.S.C. §2000e *et seq.,* to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the

2

EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

**FACTS**

9. Ms. Childers started working for Ascend as a Commercial Loan Processor on April 4, 2022.

10. Her job duties primarily consisted of preparing paperwork for loan closings after receiving information from the loan officers. She never attended closings or met any of Ascend's clients in person. Further, the few times she ever interacted with clients were limited to brief phone conversations in the event she had to follow up with a client who had missing documentation.

11. Throughout her employment, she received positive feedback about her work performance.

12. Prior to being hired by Ascend, Stacie Reynolds, Commercial Documentation Manager at Ascend, interviewed Ms. Childers on or about March 15, 2022.

13. During that interview, Ms. Childers disclosed to Ms. Reynolds that she and her husband had a side real estate business buying and flipping houses.

14. After that interview, Ms. Childers was hired, and began reporting directly to Ms. Reynolds.

15. Ms. Childers worked in Ascend's Business Solutions department, which consisted of three (3) employees: Ms. Childers, Ms. Reynolds, and Josh Fann.

16. Throughout her employment, Ms. Childers openly discussed her real estate business with Ms. Reynolds and other colleagues at Ascend.

17. On numerous occasions, Ms. Childers sent text messages to Ms. Reynolds about closings she had and the status of ongoing renovations for her investment properties. Some of those conversations took place on: May 16, 2022; September 22, 2022; March 21, 2023; March 31, 2023; and April 6, 2023.

3

18. Ms. Reynolds never raised any concerns about the real estate business, and even shared congratulations whenever a closing went through.

19. On September 1, 2022, Ms. Childers began taking courses to obtain her real estate license, so she and her husband could save on the 2-3% commission they had to pay for each home sale.

20. While she was taking the real estate license courses, Ms. Childers openly discussed that she was taking courses in order to obtain her Real Estate License in the State of Tennessee at the office with both Ms. Reynolds and Mr. Fann.

21. She completed the courses on December 17, 2022.

22. On December 25, 2022, Ms. Childers took her real estate license exam. When she returned to work after the holidays, she told both Mr. Fann and Ms. Reynolds about her experience taking the exam remotely.

23. On January 3, 2023, Ms. Childers received her Initial Affiliate Broker License from the Tennessee Department of Commerce & Insurance.

24. She shared this news with Ms. Reynolds and other colleagues at Ascend.

25. At no time prior to April 2023 did Ms. Reynolds inform her that obtaining her Real Estate License in the State of Tennessee would be a conflict of interest with her employment at Ascend.

26. Prior to her termination from Ascend, Ms. Childers ran her real estate business as a sole proprietorship and only offered real estate agent services to her own home flipping business and did not, at any time, represent any other clients or customers as a real estate agent.

27. On March 13, 2023, Ascend gave Ms. Childers a raise for approximately $2,500.16.

28. Approximately one (1) week later, Ascend gave Ms. Childers a $2,293.49 bonus for her work.

4

29. On March 21, 2023, Ms. Childers again sent a text message to Ms. Reynolds and Mr. Fann, letting them know she had just finished a closing, as a real estate agent, and was headed to Ascend's headquarters in Tullahoma. Ms. Reynolds responded, "Be safe."

30. On March 31, 2023, Ms. Childers sent another text message to Ms. Reynolds and Mr. Fann, updating them on the status of a closing related to her real estate business. Ms. Reynolds responded: "Sounds good."

31. On March 30, 2023, Ms. Childers discovered she was pregnant with her first child.

32. She and her husband immediately began sharing the news with their family, friends, and coworkers. Ms. Childers discussed her pregnancy openly in the office, as another coworker (Mr. Fann) was also expecting a child with his wife.

33. Mr. Fann advised Ms. Childers that she would need to request FMLA leave to cover her prenatal appointments and maternity leave.

34. Ms. Childers then spoke with Ms. Reynolds about her pregnancy, the effect on workflow in the office, Ascend's maternity leave policies, and when and how to request FMLA leave for her upcoming maternity leave from Ascend. Ms. Reynolds congratulated her on her pregnancy and spoke with her about the maternity leave policy and the process for requesting leave.

35. On April 6, 2023, Ms. Childers again sent a text message to Ms. Reynolds updating her on the status of a renovation related to her real estate business.

36. On April 10, 2023, Ms. Reynolds, for the first time, informed Ms. Childers that she would have to submit a formal request for approval of her alleged outside employment.

37. On April 11, 2023, Ms. Childers submitted her FMLA paperwork to Ms. Reynolds, requesting leave for her pregnancy and related appointments. Her first prenatal appointment was scheduled for the following week.

38. On April 12, 2023, Ms. Childers received an email saying that her supervisor had denied her request for outside employment.

39. The next week, Ms. Childers spoke with Peggy Stubblefield, Ascend's Chief Human Resources Officer, about the issue. During their meeting, Ms. Childers asked Ms. Stubblefield why there was suddenly an issue with her alleged outside employment, and if it would affect her job at Ascend.

40. Ms. Stubblefield explained that she wasn't sure of an appropriate resolution, as a decision had not yet been made about Ms. Childers' job.

41. On April 20, 2023, Ms. Childers sent an email to Ms. Reynolds, Kim DeBerry (Ms. Reynolds' supervisor), Ms. Stubblefield, and Trevor Williams (SVP of Lending at Ascend), complaining that she felt she was being discriminated against for requesting leave due to her pregnancy.

42. The next day, April 21, 2023, Ms. Reynolds brought Ms. Childers into a meeting where she was served with termination papers, told to clean out her desk and escorted out of the building.

43. Upon information and belief, other employees at Ascend who are similarly situated to Ms. Childers and outside her protected class have had requests for outside employment approved without issue.

**Count I**
**Violation of Title VII – Sex Discrimination**

44. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

45. Title VII defines "because of sex" or "on the basis of sex" as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions[.]

> 42. U.S.C. § 2000e(k).

6

46. Plaintiff was a member of a protected class on the basis of her sex and pregnancy.

47. Plaintiff was qualified for her position.

48. Plaintiff suffered an adverse employment action as a result of discrimination on the basis of her sex when she was terminated.

49. There is a nexus between Plaintiff's pregnancy and her termination.

50. Other employees who were outside Plaintiff's protected class and were similarly situated to Plaintiff were treated differently.

51. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

52. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count II**
**Violation of Title VII - Retaliation**

53. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

54. Plaintiff was a member of a protected class on the basis of her sex and pregnancy.

55. Plaintiff engaged in protected activity under Title VII by complaining to her supervisors and Human Resources about discrimination in the workplace.

56. Defendant knew Plaintiff engaged in this protected activity.

57. After Plaintiff engaged in protected activity under Title VII, Defendant retaliated against her by terminating her.

58. There was a causal connection between the protected activity and the adverse employment action.

7

59. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

60. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorney's fees, costs, interests, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count III**
**Violation of FMLA – Retaliation and Interference**

61. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

62. At all material times to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(A).

63. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A).

64. Plaintiff was entitled to receive FMLA leave to care for her own serious health condition and for the birth of her child.

65. Plaintiff engaged in a protected activity under the FMLA when she requested medical leave for the upcoming birth of her son and prenatal appointments.

66. Defendant gave Plaintiff FMLA paperwork to be completed by her health care provider.

67. Defendant knew that Plaintiff was exercising her rights under the FMLA.

68. After learning of Plaintiff's exercise of her rights, Defendant took an adverse employment action against Plaintiff when it terminated her.

69. Defendant interfered with Plaintiff's right to exercise her FMLA rights by terminating her prior to her exercise of those rights.

70. There was a causal connection between Plaintiff's protected FMLA activity and the adverse employment action.

71. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count IV**
**Violation of THRA – Sex Discrimination**

72. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

73. Plaintiff was a member of a protected class on the basis of her sex and pregnancy.

74. Plaintiff was qualified for her position.

75. Plaintiff suffered an adverse employment action as a result of discrimination on the basis of sex when she was terminated.

76. Other employees who were outside Plaintiff's protected class and were similarly situated to Plaintiff were treated differently.

77. There is a nexus between Plaintiff's pregnancy and her termination.

78. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

79. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count V**
**Violation of THRA - Retaliation**

80. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

81. Plaintiff was a member of a protected class on the basis of her sex and pregnancy.

9

82. Plaintiff engaged in protected activity under the THRA by complaining to her supervisors and Human Resources about discrimination in the workplace.

83. Defendant knew Plaintiff engaged in this protected activity.

84. After she engaged in protected activity under the THRA, Defendant retaliated against her by terminating her.

85. There was a causal connection between Plaintiff's protected activity and the adverse employment action.

86. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

87. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count VI
### Violation of TN PWFA – Pregnancy Discrimination

88. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

89. Under the PWFA, it is unlawful for an employer to, "Take adverse employment action against an employee… for requesting … a reasonable accommodation… for medical needs arising from the employee's pregnancy, childbirth, or related medical conditions[.]"

90. The PWFA specifically defines "reasonable accommodation" to include "[a]llowing flexible scheduling for prenatal visits[.]"

91. Plaintiff requested a reasonable accommodation under the PWFA when she requested medical leave to cover her prenatal care appointments.

10

92. After Plaintiff requested a reasonable accommodation under the PWFA, Defendant took an adverse employment action against Plaintiff when it terminated her.

93. As a result of these acts and omissions, Defendant violated the PWFA.

94. As a result of Defendant's violation of the PWFA, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorneys' fees.

## RELIEF REQUESTED

Plaintiff respectfully requests:

A. A jury trial;

B. Back pay and damages for lost benefits, insurance and actual damages;

C. Reinstatement and/or front pay;

D. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

E. Punitive damages;

F. Attorneys' fees and expenses;

G. Prejudgment interest and, if applicable, post-judgment interest; and

H. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

**Hunter Law Firm**

*/s/ Anne Bennett Hunter*
Anne Bennett Hunter, BPR No. 022407
Kaitlyn E. Lyons, BPR No. 040205
101 Creekside Xing, Suite 1700-307

11

Brentwood, TN 37027
615.592.2977
615.628.0906 Facsimile
anne@hunteremploymentlaw.com
kate@hunteremploymentlaw.com

*Attorneys for Plaintiff*

12